NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2111
_____

UNITED STATES OF AMERICA

v.

LUIS SALDANA-FIGUEROA,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-17-cr-00303-001)
District Judge:  Hon. Sylvia H. Rambo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2019

Before:  CHAGARES and BIBAS, *Circuit Judges*, and SÁNCHEZ,* *Chief District Judge*.

(Filed: February 19, 2019)
_____

OPINION**
_____

_____

* The Honorable Juan R. Sánchez, Chief District Judge of the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

SÁNCHEZ, *Chief District Judge*.

Appellant Luis Saldana-Figueroa pleaded guilty to one count of illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(1). The District Court imposed a sentence of 48 months' imprisonment. Saldana-Figueroa now appeals that sentence as procedurally and substantively unreasonable. For the reasons set forth below, we will affirm.

## I.

As we write primarily for the benefit of the parties, we recite only the essential facts and procedural history. Saldana-Figueroa is a 34-year-old citizen of Mexico who has been deported from the United States on two previous occasions in March 2011 and January 2014. Presentence Investigation Report (PSR) ¶ 4, 8, 12. Saldana-Figueroa reentered the United States without authorization in April 2017 and was later arrested for driving under the influence (DUI) in Dauphin County, Pennsylvania. *Id.* ¶ 13. Following his arrest, Saldana-Figueroa was charged with illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).

The PSR calculated the appropriate United States Sentencing Guidelines range at 57 to 71 months' imprisonment. The Guidelines calculation was driven largely by Saldana-Figueroa's criminal history, which included three DUI convictions, PSR ¶¶ 31, 33, 35, as well as convictions for false identification to law enforcement, *id.* ¶ 7, driving with a suspended license, *id.*, and illegal reentry after deportation, *id.* ¶ 11. The PSR

2

noted that, in addition to the three DUI convictions, Saldana-Figueroa had two other DUI arrests, one that was disposed of by Pennsylvania's Accelerated Rehabilitation Disposition (ARD) program, and one that was still pending at the time of sentencing. *Id.* ¶¶ 4-6, 9, 13.

In calculating Saldana-Figueroa's Guidelines range, the PSR assigned Saldana-Figueroa a base offense level of 8 pursuant to U.S.S.G. § 2L1.2(a), *id.* ¶ 18, and applied a 4-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(B) for his prior felony conviction for illegal reentry, *id.* ¶ 19, an 8-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(2)(B) for a 2010 DUI conviction for which he received a sentence of up to three years' imprisonment, *id.* ¶ 20, and an additional 4-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(3)(D) for committing a felony offense after he was previously deported, *id.* ¶ 21. Saldana-Figueroa also received a 3-level reduction pursuant to U.S.S.G. § 3E1.1 for his acceptance of responsibility, *id.* ¶ 27, resulting in a total offense level of 21, *id.* ¶ 28. The PSR assigned Saldana-Figueroa nine criminal history points, resulting in a criminal history category of IV. Saldana-Figueroa did not object to the PSR's calculations of the Guidelines range. Addendum Presentence Report.

At sentencing, defense counsel moved for both a downward departure and a downward variance from the Guidelines range. App. 24-30. Defense counsel informed the District Court that it had the discretion to grant a downward departure pursuant to Application Note 5(C) to U.S.S.G. § 2L1.2 (now located at Note 6(C)), which provides:

3

> **Departure Based on Seriousness of a Prior Offense.**—There may be
> cases in which the offense level provided by an enhancement in subsection
> (b)(2) or (b)(3) substantially understates or overstates the seriousness of the
> conduct underlying the prior offense, because . . . (C) the time actually
> served was substantially less than the length of the sentence imposed for the
> prior offense. In such a case, a departure may be warranted.

U.S.S.G. § 2L1.2, cmt. n.5. Defense counsel argued a departure was warranted because the 8-level enhancement Saldana-Figueroa received pursuant to U.S.S.G. § 2L1.2(b)(2)(B) for his 2010 DUI conviction overstated the seriousness of that offense as he only served 90 days of the three-year sentence imposed. App. 25.

Defense counsel further argued that a variance was warranted under 18 U.S.C. § 3553(a) because the final Guidelines range was "greater than necessary" to meet § 3553(a)'s sentencing objectives. App. 25. Defense counsel advocated for a significant variance from the Guidelines range because Saldana-Figueroa's three DUI convictions were considered misdemeanors in Pennsylvania but counted as felonies toward his Guidelines calculation. *Id.* at 25-26. The Government opposed defense counsel's motions for a downward departure or variance based on its concerns about Saldana-Figueroa's "blatant disregard for the laws of the United States." *Id.* at 31. The District Court ultimately denied Saldana-Figueroa's motion for a downward departure, *id.* at 38, but determined that a nine-month downward variance from the Guidelines was warranted, resulting in a term of 48 months' imprisonment, *id.* at 33.

4

In imposing its sentence, the District Court expressed concern about Saldana-Figueroa's prior convictions, recidivism, and alcohol abuse. *Id.* at 34-35. The District Court noted that two of Saldana-Figueroa's previous DUI arrests occurred when he had a Blood Alcohol Content (BAC) of over 0.20 percent—more than double the 0.08 legal limit in Pennsylvania—and observed that driving with such a high BAC "can lead to accidents and deaths." *Id.* Defense counsel objected to the District Court's consideration of these high BAC levels because neither of these arrests resulted in a conviction. *Id.* at 36-37. In response to defense counsel's objection, the District Court stated that it would "remove from [its] reasoning any references to [the BAC levels]." *Id.* at 37. The District Court nevertheless declined to grant a further downward variance, reiterating its concerns over Saldana-Figueroa's previous criminal conduct. *Id.*

Saldana-Figueroa now appeals his sentence, arguing the District Court erred by imposing a sentence that was procedurally and substantively unreasonable. Saldana-Figueroa contends his sentence was procedurally unreasonable because the District Court failed to give meaningful consideration to his motion for a downward departure and did not provide a rational and meaningful justification for its sentence. Saldana-Figueroa contends his sentence was substantively unreasonable because "no reasonable sentencing court would have imposed [48 months' imprisonment] for the reasons the district court provided." Appellant's Br. at 14.

5

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review both the procedural and substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). Our review for reasonableness proceeds in two stages. First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Gall*, 552 U.S. at 51. Second, if we find that the sentence is procedurally sound, we then consider if it is substantively reasonable given the "totality of the circumstances." *Id.* If the sentence is within the applicable Guidelines range, we may presume the sentence is reasonable. *Rita v. United States*, 551 U.S. 338, 350–51 (2007). "[I]t is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *United States v. Handerhan*, 739 F.3d 114, 120 (3d Cir. 2014) (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)) (alteration in original).

## III.

**A.      Procedural Reasonableness**

When imposing a sentence, a district court must follow the three-step process set forth in *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006). First, the district court must calculate the defendant's Guidelines range precisely. *Id.* at 247. Second, the court must "formally rul[e]" on the parties' motions, and "stat[e] on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation." *Id.* (first and second alterations in original) (citation and internal quotation marks omitted). Third, the court must "exercise[ ] [its] discretion by considering the relevant [§ 3553(a)] factors in setting the sentence[,] regardless [of] whether it varies from the sentence calculated under the Guidelines." *Id.* (first and third alterations in original) (citation and internal quotation marks omitted). "During the third step, district courts should engage in 'a true, considered exercise of discretion . . . including a recognition of, and response to, the parties' non-frivolous arguments.'" *United States v. Friedman*, 658 F.3d 342, 359 (3d Cir. 2011) (quoting *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006)). Saldana-Figueroa raises two claims of procedural error, arguing his sentence was procedurally unreasonable because the District Court erred at steps two and three of the *Gunter* process.

Saldana-Figueroa first argues the District Court erred at step two of the *Gunter* process by failing to give meaningful consideration to his motion for a downward

departure and failing to state its reasons for denying the requested departure. Whether we have jurisdiction to review Saldana-Figueroa's challenge to the District Court's denial of his downward departure motion depends on the basis for denial, as we lack jurisdiction to consider a challenge to a district court's discretionary denial of a departure motion, *see Jackson*, 467 F.3d at 839. The threshold issue here is whether the District Court exercised its discretion in denying his motion. In determining whether the District Court exercised its discretion, we look to the entire record, not just the District Court's words. *See id.* at 840 (inferring that the denial of a departure motion was discretionary based on the district court's actions).

Here, the District Court did not expressly state whether it was exercising its discretion in denying Saldana-Figueroa's downward departure motion, stating only "[i]t's denied" when defense counsel asked for clarification on the disposition of the motion. App. 38. However, evaluating the entire record, it is apparent that the District Court exercised its discretion in denying the motion and that we therefore lack jurisdiction to review the denial.

At the outset, there is nothing in the record to affirmatively indicate "that the [District] Court was acting under the mistaken belief that it lacked the discretion to [depart from the Guidelines range] under the evidence before it." *United States v. Jones*, 566 F.3d 353, 366 (3d Cir. 2009) (internal quotation marks omitted); *see also United States v. Vargas*, 477 F.3d 94, 103 (3d Cir. 2007), *abrogated on other grounds by United*

8

*States v. Arrelucea-Zamudio*, 581 F.3d 142, 149, 156 (3d Cir. 2009) (holding that jurisdiction to review the denial of a departure arises "if the district court's refusal to depart downward is based on the mistaken belief that it lacks discretion to do otherwise").

At the sentencing hearing, the parties informed the District Court of its discretionary authority to depart from the Guidelines range. Defense counsel expressly informed the District Court that it had authority to grant a departure pursuant to Application Note 5(C) to U.S.S.G. § 2L1.2. *See* App. 25 ("[I]t's clear, if the Court wanted to, the Court could grant him a departure because he only served 90 days of that sentence. That's C of Note 5 . . . ."). Significantly, the Government did not suggest that the District Court lacked authority to grant a departure, but instead argued a departure was not warranted because of Saldana-Figueroa's extensive recidivism and "blatant disregard for the laws of the United States." *Id.* at 31; *see Jackson*, 467 F.3d at 840 (holding the government implicitly recognized the judge's discretion to grant a departure when it argued the defendant did not demonstrate an acceptance of responsibility "extraordinary enough to deserve a departure"); *cf. United States v. Lofink*, 564 F.3d 232, 240 (3d Cir. 2009) (vacating a sentence where the court could not infer from the record whether the district court's denial of a departure motion was discretionary, in part because "the government . . . argued to the District Court that [the defendant] was not eligible for [a] departure").

And the District Court's actions reflect its awareness of its discretionary authority. The District Court heard testimony and argument on the motion, App. 17-25, 30, analyzed the relevant evidence, *id.* at 33-36, recognized that both a departure and variance were sought, and concluded that a downward departure was not appropriate, but a variance was warranted, *id.* In these circumstances, we can infer that the District Court was aware of its discretionary authority and exercised its discretion in declining to depart. Consequently, we lack jurisdiction to review Saldana-Figueroa's challenge to the District Court's discretionary decision at step two of the *Gunter* process. *See Jackson*, 467 F.3d at 839.

Next, Saldana-Figueroa argues the District Court erred at step three of the *Gunter* process by failing to give a rational and meaningful justification for the sentence it imposed. In reviewing the reasonableness of the District Court's exercise of discretion at step three of the *Gunter* process, we consider whether the District Court gave "meaningful consideration to the relevant § 3553(a) factors." *Id.* at 841 (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006)). Although more than a rote recitation of the § 3553(a) factors is required, *Tomko*, 562 F.3d at 567, the District Court need not "comment on every factor if the record makes clear the court took the factors into account in sentencing," *Lofink*, 564 F.3d at 238 n.13 (citation and internal quotations omitted).

Saldana-Figueroa contends that the District Court failed to give meaningful consideration to the § 3553(a) factors because the District Court did not reevaluate each § 3553(a) factor individually and did not grant a further downward variance after

10

removing its consideration of the two BAC levels above 0.20 percent. We find no procedural error here. The transcript of the sentencing hearing demonstrates that the District Court initially made explicit findings regarding (1) the nature and circumstances of the offense and Saldana-Figueroa's criminal history; (2) the need for the sentence to deter Saldana-Figueroa from future criminal acts and the need to provide substance-abuse treatment; and (3) the Guidelines range and possible sentences. App. at 33-35. Furthermore, the record demonstrates the District Court implicitly considered potential policy statements and possible sentencing disparities. *See id.* at 34-38. Although the District Court did not reweigh each § 3553(a) factor after removing its consideration of the two BAC levels, it did reweigh Saldana-Figueroa's criminal history—the § 3553(a) factor to which the disputed BAC levels were most relevant—noting that even without those BAC levels, Saldana-Figueroa's criminal history remained a significant factor in determining an appropriate sentence. *Id.* at 37. That Saldana-Figueroa did not receive a greater variance after the District Court removed its consideration of the two BAC levels, does not mean the District Court failed to give meaningful consideration to the § 3553(a) sentencing factors. Because the totality of the record demonstrates that the § 3553(a) factors were sufficiently considered by the District Court and reflected in the variance granted, we find no procedural error at *Gunter* step three.

11

**B. Substantive Reasonableness**

Turning to Saldana-Figueroa's challenge to the substantive reasonableness of the sentence imposed, we will affirm a procedurally sound sentence as substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. In reviewing the substantive reasonableness of a sentence, we look to "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011) (quoting *United States v. Doe*, 617 F.3d 766, 769-70 (3d Cir. 2010)). "We focus on the totality of the circumstances, and the party challenging the sentence bears the burden of proving the sentence's unreasonableness." *Friedman*, 658 F.3d at 360.

Saldana-Figueroa contends his sentence is substantively unreasonable because the District Court focused on his state convictions which do not implicate federal interests, and impermissibly punished him for those convictions with a long term of imprisonment by failing to vary further from the Guidelines. We disagree. After correctly calculating the Guidelines range without objection from Saldana-Figueroa, the District Court determined that 57 to 71 months' incarceration was "more than necessary to meet the sentencing objectives," and granted Saldana-Figueroa a nine-month downward variance from the Guidelines range. App. at 34. Because we may presume that a sentence within the

12

Guidelines range is reasonable, *see Rita*, 551 U.S. at 350-51, Saldana-Figueroa faces a heavy burden to show that his below-Guidelines sentence is substantively unreasonable.

Contrary to Saldana-Figueroa's assertion that the District Court sought to impermissibly punish him for his state convictions by failing to further vary from the Guidelines range, the record demonstrates the District Court engaged in a reasoned consideration of Saldana-Figueroa's criminal history within the confines of the § 3553(a) factors, determined the Guidelines range did not appropriately reflect his history, and granted a downward variance accordingly. App. at 34-35. Saldana-Figueroa's sentence is not substantively unreasonable merely because he believes he deserved a more significant downward variance than he received. *See Handerhan*, 739 F.3d at 124 (affirming a sentence as substantively reasonable where the defendant contended the 24-month downward variance he received at sentencing was insufficient due to the district court's alleged failure to correctly weigh mitigating factors); *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007) ("Nor do we find that a district court's failure to give mitigating factors the weight a defendant contends they deserve renders the sentence unreasonable."). Thus, we find that Saldana-Figueroa's sentence of 48 months' imprisonment is substantively reasonable.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.

13